In the Matter of the Estate of HERMAN HUG, Deceased.

Surrogate's Court, New York County, September 18, 1951.

*Edward W. Stitt, Jr.,* and *Charles F. Krause, Jr.,* for Herman C. Hug, petitioner.

*Frank Sowers* and *James H. Black* for Guaranty Trust Company of New York, as executor of Herman Hug, deceased, respondent.

*Hamilton McInnes* for State Tax Commission, respondent.

FRANKENTHALER, S. A son of the decedent instituted a proceeding for issuance of ancillary letters testamentary based upon a will established in Switzerland and for the vacatur of a decree of this court admitting to probate an earlier will which related only to property located in this country. Petitioner contends that under Swiss law the effect of the Swiss will was to revoke all prior wills, including the American will. The Swiss courts have never ruled on the effect of the Swiss will on the earlier American will.

" Before granting ancillary letters testamentary upon a will probated elsewhere, the courts of this jurisdiction must determine whether the will disposes of personal property here." (*Matter of Gifford,* 279 N. Y. 470, 477.) The fundamental question, therefore, is whether the American will has been revoked by the Swiss will so that the latter disposed of all property wherever situated or whether the Swiss will operated only on property outside the United States. The American will already has been probated in this jurisdiction and petitioner does not seek original probate of the Swiss will here. The first question to be taken up in orderly procedure is whether the probate decree of October 25, 1941, should be reopened and petitioner given permission to file an answer in that proceeding alleging revocation of the American will. In accordance with a prior direction of the court (201 Misc. 709), proof has been submitted on two preliminary issues: first, on the defense interposed by the executor that petitioner is estopped to contest the will admitted to probate here, and, secondly, with respect to the reasonable probability of petitioner's success on the question of revocation.

The testator died on July 7, 1941, a resident of Zurich, Switzerland. It had been his practice to keep certain personal property in this State and he left in this State a will dated May 7, 1934, which, by its terms, disposed only of property located in the United States. The will declared that the disposition of such property was to be " controlled, construed and regulated pursuant to the laws of the State of New York." That instrument was offered for probate as the will of a nonresident who died without

the State leaving personal property in this county. The distributees or heirs of the testator, under both New York and Swiss law, were his widow and three children. The 1934 will gave one half of the American property to the widow and the other half to a son and a daughter. The will stated that no provision was made for the other son, the petitioner herein, " due to the fact that he has heretofore been amply provided for ". On August 28, 1941, petitioner and his half-brother executed and acknowledged written waivers of citation and consents that the will of May 7, 1934, be admitted to probate. Citation was duly served upon the widow and daughter. The will was admitted to probate by decree dated October 25, 1941, and the corporate executor entered upon the administration of the estate.

The testator left in Switzerland a holographic will in the German language which had been executed on March 2, 1940. This instrument was established in Switzerland by decree dated August 16, 1941. The New York probate proceeding had not then been concluded. Apparently none of the parties knew at this time of the Swiss proceedings. The 1940 will did not in express terms revoke any other will or make reference to any other testamentary instrument. An English translation of the German text states that the testator's " future estate will consist of the unencumbered real estate Kurhausstrasse 15, Zurich 7, as well as of securities." The will does not state what securities are intended to be disposed of or where they are located. With respect to the securities, the will reads: " From my property consisting of securities the amount of 50000 francs shall be eliminated right at the beginning because this represents the dowry brought in by my wife Anna, nee Huber. * * * All of my securities and outstanding claims shall be turned over to my wife * * * as her absolute property." With respect to the Swiss real property, the will directs that it be sold and that the proceeds, up to 96,000 francs, be divided among the widow and three children, including petitioner. Any excess over the sum stated was to be the sole property of the wife. Apparently, the securities located in Switzerland at the time of decedent's death were insignificant in value. Estate taxes and other expenses ate heavily into the realty proceeds.

It is to be noted that petitioner takes no portion of the personal property under either will. He was not a beneficiary at all under the 1934 will. Under the 1940 will he took nothing except a one-fourth interest in the proceeds of sale of a parcel of realty located in Switzerland. His interest in the personal property

located in New York is accordingly not a direct interest and is based upon his claim that had the New York assets been administered under the 1940 will and by the domiciliary executor, his share of the realty proceeds would not have been so greatly diminished by the dowry and other charges payable out of personalty.

Petitioner contends that under Swiss law a later will takes the place of an earlier will even without an express provision of revocation " insofar as it is not without doubt merely a completion thereof." He argues that the 1940 will is not without doubt merely a completion of the 1934 will and that it, therefore, revokes the earlier will. He also claims that the later will cannot be fully effective unless it was intended to include the securities located in New York because there were not, at the time of death, securities in Switzerland of any appreciable value.

The administration of the New York assets has long been completed. The assets were distributed among the widow and two children in 1942 and early 1943. The widow and the two children who are beneficiaries under the 1934 will executed a discharge and release of the New York executor under date of March 1, 1943. They have taken no part in this proceeding. They have never attempted to challenge the releases. The Swiss executor takes no part in the pending proceeding. The widow and the two children who have received their legacies are nonresidents of the State, with the result that none of the distributed assets are presently within this jurisdiction. What petitioner really seeks, therefore, is to compel the New York executor to pay him out of its own funds the amount by which his one fourth of the proceeds of sale of the Swiss realty was reduced by Swiss administration charges. His right to ultimate relief is obviously not determinable in the present proceeding but, if successful here, could be realized only after litigation in successive proceedings leading up to a compulsory accounting by the New York executor and a surcharge against it either as to the whole fund or as to a portion of it. In the pending proceeding, the sole questions are whether petitioner may seek to vacate the decree of probate to which he consented in 1941 and, if so, whether the 1940 will revoked the earlier one and stands as the sole testamentary instrument.

Petitioner is met at the very outset of the litigation with the charge that he is estopped in equity from maintaining the pending suit to vacate the decree of October 25, 1941, admitting the will to probate here. This defense, as it developed on the hearing and in the argument, involves more a question of laches than

true equitable estoppel. There are, of course, differences in the application of the two principles, though none so great as to preclude consideration of the question of laches under the broad allegation of the answer, especially where there is no objection to that course and no claim of surprise or prejudice. Indeed, laches can be said to operate as an estoppel (2 Pomeroy on Equity Jurisprudence [5th ed.], p. 179) or as a quasi-estoppel (Vol. 3, p. 245).

It is well established that an application to vacate or open any judgment may be defeated by laches. (1 Freeman on Judgments [5th ed.], § 271.) The Surrogate is expressly authorized to " open, vacate, modify, or set aside * * * a decree or order of his court * * * in a like case, and in the same manner, as a court of record and of general jurisdiction exercises the same powers." (Surrogate's Ct. Act, § 20, subd. 6.) In exercising jurisdiction to revoke probate of a will, the courts have invariably pointed out that laches will estop a person from attacking the probate decree (*Matter of Schell,* 272 App. Div. 210, 214; *Matter of Jackson,* 134 Misc. 750, affd. 227 App. Div. 777; *Matter of Gori,* 129 Misc. 541, 542; *Matter of Kalmowitz,* 134 Misc. 508; *Matter of Rowe,* 134 Misc. 759; see, also, 2 Page on Wills, § 680.) What " constitutes laches which will defeat relief is a matter that depends upon the circumstances of the case and of course vests somewhat in the sound discretion of the court. Consequently no rule can be laid down which will fit all cases, nor will the decision in one case with respect to any particular period of time necessarily govern another case involving a similar period." (1 Freeman on Judgments, § 272.) Mere delay is not alone sufficient to preclude such relief. But unreasonable delay and resulting prejudice to other parties will move the court to deny relief against a valid and binding judgment.

It is undisputed that on or about September 19, 1941, petitioner received from the Swiss Consulate in New York a copy of the 1940 will and a copy of the decree of August 16, 1941, made by the District Court of Zurich. Petitioner's consent to probate of the 1934 will had been executed approximately three weeks earlier but the 1934 will had not yet been admitted to probate. More than a month elapsed before this court made the decree admitting the 1934 will to probate. Petitioner never made any move to assert the revocation of the 1934 will until the year 1947, six years after the decree of probate and four years after the administration of the American assets had been completed. During the period immediately following the probate of the will, petitioner had been in communication with the attorneys for the

New York executor. In November, 1941, and again in December of that year, petitioner responded to requests of the executor's attorneys for information respecting estate affairs and he never once mentioned the 1940 will, a copy of which was then in his possession. Insofar as this record shows, the New York executor never had any actual knowledge of the contents of the 1940 will until petitioner furnished it with a copy after the assets had been distributed. Had petitioner acted with reasonable promptness, the question which he now presents could have been brought before the court for judicial determination while there were assets of the estate sufficient in amount to defray the executor's legal expenses and to satisfy the rights of any interested beneficiary. By his unreasonable delay petitioner has permitted the assets to be distributed and to be removed from this jurisdiction with the result that the executor must presently resort to its own funds for its legal expenses with little probability of recoupment. There has thus been unreasonable delay on the part of petitioner and prejudice to the executor who relied on a valid decree in a proceeding to which petitioner had been a party.

Petitioner contends, however, that the prejudice has not resulted from his delay but rather from the negligence of the executor. He contends that prior to final distribution of the assets, the executor had notice of such facts as to require it to make an inquiry with respect to the Swiss will and that no distribution of New York assets should have been made until the effect of that will upon the earlier one could have been judicially determined. The only notice imputed to the executor is based upon events occurring in 1942. Under date of February 2, 1942, a New York insurance company transmitted to the New York executor a copy of a letter received by the former from Credit Suisse, a Swiss banking institution. The latter advised that pursuant to a Swiss court order, the Swiss executor, Dr. Arthur Stinmann, had " charged us with the liquidation of the estate " and it requested confirmation of the amount of decedent's life insurance, the name of the beneficiary and the " price of repurchase as per July 7th, 1941." The letter stated that this information was needed for the board of assessment of Zurich. The insurance company advised Credit Suisse that the proceeds of the policy had been paid to the New York executor and that it had referred the inquiry to that fiduciary. Prior to this time the New York executor had been in communication with Credit Suisse relative to the execution of powers of attorney by the widow. On February 3, 1942, the attorneys for the executor wrote Credit Suisse acknowledging receipt of the letter trans-

mitted by the insurance company and giving particulars as to
the probate of the 1934 will and as to the New York assets. That
letter also discussed the powers of attorney previously returned
to Credit Suisse. The letter concluded: '' We assume that the
will which was admitted to probate in Zurich and under which
you received your authority as executor relates only to prop-
erty outside of the United States. Please advise us if that
assumption is correct before the Guaranty Trust Company of
New York, the executor appointed here, makes any distribu-
tion.'' Credit Suisse never responded to the latter request for
information.

It is asserted by petitioner that at this date in early 1942,
the New York executor knew that a will had been established
in Switzerland and recognized a duty to learn, before making
distribution, whether the Swiss will disposed only of Swiss
property or affected New York property as well. Distribution
of the New York assets was made in part in October, 1942, and
completed in March, 1943. Petitioner charges that the New
York executor knew that the 1934 will was not the latest will,
that it violated its duty as executor by continuing to administer
the estate, making distribution, failing to inform the court of
those facts and wholly disregarding the later will. There is
not the slightest evidence that the New York executor knew
the date of the Swiss will or its contents until petitioner's
present claim was made. True, the executor expected that there
would be a Swiss will and knew that a will had been established
in Switzerland. Indeed, the very form of the New York will,
relating as it did only to New York assets, made reasonable
the inference that there would be a separate instrument relating
to other property. However, as early as October, 1941, the
institution in charge of the administration of the Swiss estate
knew of the probate of the New York will, it continued dealings
with the New York executor as agent for the widow and never
once demanded transmission of the New York assets. More-
over, at one time or another, the New York executor had been
in communication with not only the Swiss representative but
with the widow and three children of the decedent. Not only
did none of them ever claim that the New York will had been
revoked but the widow consistently regarded the New York will
as effective. In a letter dated June 23, 1941, offered in evidence
by petitioner, the widow advised the New York executor that
decedent was then gravely ill, and referring to a letter written
by the executor to decedent wherein the advisability of recon-
sideration and possible revision of his will was suggested, she

stated that to her knowledge "his will drawn in 1934 is the latest executed." This transaction occurred just before his death. Long after they had knowledge of the 1940 will and the Swiss proceedings, she and two of the children participated in a division of the New York assets on a basis which would have been prejudicial to the widow if the 1940 will had been intended to dispose of all property.

In addition, the New York executor received a letter from decedent that was dated April 19, 1941 — less than three months before his death. This letter was in response to the letter above referred to, wherein the desirability of a revision of the will was suggested. The decedent said that "considering my old age (84) and the very long time, it takes letters to reach the U. S. A., I think it advisable not to make any changes in my will". Petitioner objected to the reception of this letter on the ground of materiality, hearsay, and because not binding on petitioner. Such a statement of a decedent is clearly inadmissible on the question of revocation (*Matter of Kennedy*, 167 N. Y. 163, 170). In view of all of the other circumstances, however, it is material on the question of responsibility for the change in position resulting from complete distribution of the assets. Petitioner claims that the executor had no right to make distribution under the probated will because it had knowledge of a will established in Switzerland, was under a duty to make inquiry as to that will, and that hence the resulting damage to it was caused by its own neglect and not by petitioner's delay. The decedent's letter, of course, does not bind petitioner on the question of revocation and is not decisive of any issue but it is material to the issue of laches and is to be considered together with all other circumstances. All of the facts made reasonable the assumption in which all the heirs and both fiduciaries joined. If petitioner changed his mind, desired to retract his consent to the 1934 probate and regarded that will as ineffective, he should have acted promptly to advise the executor who relied on the probate decree.

The court, therefore, holds that petitioner is barred by laches from now litigating the revocation of the 1934 will. He unreasonably delayed raising the question until there were no longer any assets to be administered here. That delay is prejudicial to the executor.

The court has assumed the status of petitioner to attack the 1934 will although he takes no personal property under the 1940 will whose validity he concedes. His rights, if any there ever were, would appear to be more properly concerned with the

Swiss administration rather than the New York administration because his complaint is directed against payments, particularly the dowry, out of realty proceeds. The 1940 will directs the dowry to be set aside out of securities. Whether it was properly paid out of realty proceeds is a question over which this court had no jurisdiction. Whether Swiss estate taxes are primarily payable out of personalty and whether such taxes are apportionable against those who receive personalty outside of Switzerland, are questions which cannot be answered from this record. All point to the conclusion, however, that if petitioner has any rights that should be vindicated, his complaint should be made in the Swiss proceedings.

On the question of revocation of the 1934 will, the experts produced by both sides are in disagreement. Petitioner's expert relies on the Swiss statute and is of the view that because the 1940 will is not without doubt merely a completion of the 1934 will, it stands in place of it and hence revokes it. Respondent's expert testified that under Swiss law the question is one of testamentary intent and that this testator did not intend to revoke the 1934 will. Because the New York will dealt only with American assets, a separate will dealing with other assets could never be regarded as a codicil or mere completion of the New York will. The question must be whether the decedent intended the 1940 will to govern all of his property wherever located or only property not disposed of in the American will. The proof shows that at the date of his death, decedent did not have securities in Switzerland of substantial value but it does not clearly show what securities he had in Switzerland on March 2, 1940 — the day he executed his will. Moreover, the Swiss will deals mainly with a specified parcel of realty and " securities ". It did not say " all securities." It obviously was intended to govern only such securities as might come under Swiss administration. Decedent owned securities in Switzerland and it was not inconceivable that even his American securities might be brought to Switzerland before his death. No particular value of securities is required to make the will effective. The will does not bequeath 50,000 francs to his wife. It says that from his securities, 50,000 francs shall be eliminated at the beginning because that represents his wife's dowry. It then provides that all securities shall be turned over to the wife. The distinction that decedent was attempting to make was between what belonged to his wife as matter of right and what passed to her by his bounty. The result to the widow was, in a practical sense, the same. The widow never claimed

that her dowry attached to assets here. She has acquiesced in a contrary decision. The Swiss will could, insofar as this record shows, be made effective regardless of the value of securities subject to Swiss administration. Petitioner has failed to establish reasonable probability of success on the question of revocation.

The application of petitioner for vacatur of the decree of October 25, 1941, admitting the 1934 will to probate, is denied.

Submit decree on notice accordingly.