James R Caruso, J.
There has been presented herewith for decision, the within proceeding brought by petitioner to open, vacate and set aside a prior decree of this court which admitted to probate the last will and testament of the decedent herein. It is within the inherent power of this court to grant such relief (Judiciary Law, § 2-a; CPLR 5015; 1A Warren’s Heaton, Surrogates’ Courts [6th ed], § 121; Practice Commentaries, McKinney’s Cons. Laws of N. Y., Book 58A, SCPA 209).
The petitioner is the duly appointed ancillary and domiciliary conservator of an adult son of the decedent. The son, while being a distributee, is also a legatee under the last will and testament of the decedent, his mother, and was and is presently a resident of the State of Massachusetts.
The petitioner on behalf of the son filed a petition in this court wherein the grounds alleged as the basis for the vacatur of the probate decree are stated ás follows:
(a) That the said son was at the time of service of citation in the probate proceeding herein a "person under disability” within the meaning of SCPA 103 (subd 37).
(b) That in the petition filed for the probate of the decedent’s will there was a failure on the part of the petitioner to disclose the son’s disability.
(c) That a guardian ad litem should have been appointed at the time of the probate of the said decedent’s will to protect the son’s interest as a "person under disability” as required by SCPA 403 (subd 2).
(d) That by reason of the aforesaid, this court was without jurisdiction over the person of the son at the time probate was decreed.
It is the contention of the petitioner that at the time and prior to the making of the probate decree and indeed continuing to date, the son was and still is a "deteriorated epileptic” which rendered him at the time of service of citation an incapacitated person and that under the circumstances this should have been called to the attention of the Surrogate in the probate petition. It is further contended by the petitioner that because of the above facts, the son was at all times prior *130 to the service of the citation upon him and to date "incapable adequately to protect his rights, although not judicially declared an incompetent” (SCPA 103, subd 24). It is to be noted that at the time of probate, the son did not have a conservator appointed fdr him and neither were such proceedings then pending at that time for the appointment of a conservator.
The petition to vacate and set aside the probate decree is supported by a detailed affidavit made by the son’s attending physician, a neurosurgeon who had been treating the son since April 17, 1971.
Upon the return date of the order to show cause which was issued pursuant to the prayer of the petition, the court designated and appointed a guardian ad litem to protect the interests of said infants who were named legatees in the last will and testament of said decedent and whose interests might be affected by the within application. The executors named in the will filed their answer to the petition generally denying the allegations thereof.
The protection of infants, incompetent persons and persons incapable of adequately prosecuting or defending their rights has always been of great concern and has been definitely stated to be the policy of the State of New York (CPLR art 12; SCPA art 4).
The court therefore, in the interests of justice directed that a plenary preliminary hearing be held in order to determine the disability of the son at the time in question.
A statement of the factual background which has terminated in the within proceeding is of significant importance. The records of this court indicate the following:
The decedent died on December 28, 1973. The petition for probate of her will was filed in this court on January 16, 1974. The petition, insofar as the son is concerned, simply sets forth his name, address, relationship to the decedent and further describes the beneficial interest given to him under the will. No mention is made of any affliction or disability. In the space indicated on the petition for the listing of persons under disability, appears the word "NONE”. An order directing mailing of citation by certified mail to the son was made on January 15, 1974 and proof of service of the mailing was duly filed together with the return receipt. Therefore, the will was admitted to probate on February 14, 1974, there being no opposition thereto.
*131 Then, on September 6, 1974 the afore-mentioned conservator was appointed on behalf of the son pursuant to the laws of the State of Massachusetts and on November 20, 1974, this conservator was appointed the son’s ancillary conservator by the Supreme Court of this State. The conservator thereafter filed the petition in this court to vacate the probate decree entered February 14, 1974.
After all of the testimony was heard by this court, motions were made by both parties upon which the court reserved decision.
The petitioner called as his witness, the son’s attending physician, a practicing neurosurgeon. During the witnesses’ testimony, numerous documents were admitted into evidence, consisting chiefly of the son’s hospital records reflecting the treatment he had received for this condition over the years. These records were used by the doctor for his further treatment of the son and also formed part of the condition as set forth in the doctor’s affidavit of December 17, 1974, which was attached to and submitted in support of the petition herein.
The doctor testified substantially as follows: that the son is now 47 years of age and has suffered from all forms of epilepsy since he was a boy; that these forms of epilepsy are termed "the petit mal”, "the grand mal” and "the psychomotor seizure”. He described the petit mal as the smallest attack, one that may simply be a momentary lapse of consciousness which may last only a matter of seconds. He further stated that the grand mal is manifested by a convulsive seizure while the psychomotor seizure was described as and one which is manifested by disordered behavior where there is no interference with consciousness but the patient tends to become confused or "his behavior becomes inappropriate”. Following these seizures, he explained, there may be sleepiness, confusion and there may also be a loss of memory of the event that took place prior to the seizure.
The doctor testified further that the son had unsuccessfully undergone preventive surgery to remedy his condition and that he is medically termed a "deteriorated epileptic”, i.e. "a person who starts out with epilepsy and whose normal intellectual function worsens over the years”, that the son is no longer able to function as an independent normal individual within society and requires large amounts of medication (twice the normal amount) to prevent him from having frequent seizures; that the process of deterioration "was fully develop *132 ing” in January and February, 1974; that he had lucid periods between seizures which in the case of some epileptics means "during their lucid interval [they may] be completely undeteriorated and quite capable of full normal mental activity”— however, the son was "not such a person”.
The doctor further pointed out that epilepsy affects a person not only when he is having a seizure, but when he is not having one as well and thus the deterioration does not vanish during the lucid period; further that the son does not have good power of concentration and that he is both a "distractable and a distracting person”.
Under cross-examination by the executors’ attorney and the guardian ad litem for infant legatees, it was brought out that this doctor last examined the son on July 16, 1973 approximately six months before the time period in question; namely January and February, 1974. However, in response to questions by the court, the doctor stated that knowing all the past history and treatments administered to the son, it was his opinion that the son’s condition was "substantially the same” in January of 1974 as it appeared to the doctor in December, 1974 at the time the doctor examined him for the purpose of making his report in support of the within petition.
Finally, with respect to the citation mailed to the son in January, 1974 concerning the probate of his mother’s will, the doctor stated without equivocation that in his opinion the son "did not have the capacity to understand and recognize the significance of this document and to express and act for himself under the circumstances.”
Included among the documents admitted into evidence is a report of confidential social security benefit information from which it appears that the son became entitled to social security disability benefits in June, 1961. In general, the various medical and hospital records in evidence, which go back over a period of 24 years, clearly demonstrate that the epileptic condition from which the son has suffered has existed since boyhood and has resulted in a steady mental deterioration.
The executors and the guardian ad litem attempted to negate this proof of mental deterioration by pointing to the fact that the son is a college graduate who at one time conducted a business of his own and to the further fact that at the time of probate of the mother’s will, communications were received by the executors from both the son and a lawyer concerning the subject probate.
*133 However, the court does not believe that these facts diminish the demonstrated mental incapacity of the son at the time in question here. His college years occurred long ago as did his venture into the wool business, which failed, back in the mid-1950’s. Obviously, the mental deterioration described above had not at those times taken its toll to the extent present at the time of his mother’s death. The communications from the lawyer, of course do not constitute an appearance on the son’s behalf in the probate proceeding and the evidence concerning the two letters sent by the son is inconclusive. There was no proof introduced to show who actually prepared or signed the letters and the doctor testified that it was possible for the son to have signed the letters while undergoing a psychomotor seizure.
SCPA 103 (subd 37) sets forth the definition of persons under a legal disability and included among such persons is "an incapacitated person”. Subdivision 24 of the same statute defines an "incapacitated person” as: "Any person who for any cause is incapable adequately to protect his rights, although not judicially declared an incompetent.”
The Practice Commentary to SCPA 103 (McKinney’s Cons. Laws of N. Y., Book 58A) points out that the incapacity intended by the statute is solely one affecting the subject’s mind.
There is no doubt in the mind of the court from the evidence introduced at this preliminary hearing that at the time in question the son suffered (and continues to suffer) from an incapacity which affected his mind to such an extent as to be considered to have been a "person under a disability” within the meaning of the statute.
SCPA 403 (subd 2) provides in part as follows: "A person under disability who does not appear by his guardian or committee * * * shall * * * appear by a guardian ad litem appointed by the court”.
The Practice Commentary to this section (McKinney’s Cons. Laws of N.Y., Book 58A, SCPA, p 398) discusses the definition of "incapacitated person” and admonishes as follows: "The latter definition creates a substantial risk that a party to the proceeding will later be held to have been incapable adequately to protect his rights and, therefore, not bound by the determination in instances where no guardian ad litem was appointed to protect his rights. ” (Emphasis supplied.)
*134 The legal effect of the failure to have a guardian ad litem appointed for the son in the probate proceeding is clear. The probate decree has thereby been rendered voidable against one who was a necessary party to the proceeding and must be set aside upon his application therefor (Matter of Weed, 107 Misc 595, 598; Matter of Jaffe, 165 Misc 407; Matter of Traver, 9 Misc 621; Matter of Donlon, 66 Hun 199; 1A Warren’s Heaton, Surrogates’ Courts [6th ed], § 79; Practice Commentaries, McKinney’s Cons. Laws of N.Y., Book 58A, SCPA 403).
The executors cross-examined the physician but offered no affirmative rebuttal evidence by any medical proof whatsoever which would tend to establish that the son was not suffering from such disability. It is true that the executors may rely upon the letters which were heretofore referred to but in actuality the court, insofar as medical testimony is concerned, received only the uncontradicted medical proof from the attending physician as above related. Upon all of the credible evidence adduced at the trial and upon consideration of the exhibits offered in evidence and upon the report of the guardian ad litem which was duly considered, the court finds that the son of the decedent was a necessary party to the probate proceeding herein; that he was a person under disability within the meaning of SCPA 103 (subds 24, 37) to wit: a person who was incapable adequately to protect his rights because of his epileptic condition and that by reason thereof a guardian ad litem should have been appointed to represent him in the original probate proceeding SCPA 403 (subd 2).
Therefore, in the exercise of its discretion and in the furtherance of justice, the probate decree of this court dated February 14, 1974 shall be opened to the extent that a guardian ad litem be appointed to represent the son in the probate proceeding and in the course thereof to file objections to probate should he deem it so advisable without prejudice to any of the proceedings heretofore had herein or anything done thereunder.
The order to be made herein will provide that the guardian ad litem to be appointed for said son shall file his objections, if any, to probate within 30 days of his appointment by the court.