OPINION OF THE COURT
Renee R. Roth, S.
This motion by decedent’s granddaughter, Anne Bobst Highley, seeks to vacate a 1979 decree which admitted to probate the will of Elmer H. Bobst in accordance with a settlement agreement signed by movant and all other interested parties.
Despite her appearance by counsel and her active participation in the probate proceeding, Ms. Highley (movant) alleges that the court never acquired jurisdiction over her. She contends that as a result of "chronic posttraumatic stress syndrome” caused by sexual abuse and incest committed by decedent, she was under a disability that required the appointment of a guardian ad litem to represent her. It is noted that movant was 38 years old when the contest was settled.
This application raises the novel question of whether movant is automatically entitled to an evidentiary hearing simply because she makes a bald allegation of disability, or whether she must make a threshold showing of disability before the finality of a decree issued 13 years earlier will be disturbed.
*778 BACKGROUND
Mr. Bobst died at age 93 on August 2, 1978, survived by his second wife, Mamdouha S. Bobst, and two granddaughters, Anne Bobst Highley and Stephanie Bobst Haymes. Under his will dated March 21, 1978, testator directed the pour-over of his residuary estate to an inter vivas trust executed on the same date (the 1978 Trust). At the time of Mr. Bobst’s death, the 1978 Trust had been funded with the bulk of his assets. The primary beneficiaries of the 1978 Trust were testator’s wife and a charitable foundation, The Elmer and Mamdouha Bobst Foundation, Inc. (the Foundation). The trust agreement also provided for distribution of $100,000 to each of decedent’s granddaughters. Decedent had also created, in 1974, three charitable remainder unitrusts (the 1974 Trusts) for the life income benefit of his granddaughters, with remainder to the Foundation.
Thus, under decedent’s estate plan, Ms. Highley was to receive $100,000 outright from the 1978 Trust and a 6% unitrust interest in the 1974 Trusts funded with $500,000. Both the will and the 1978 Trust contained in terrorem clauses. It is observed that the provisions decedent made for his granddaughters remained relatively consistent in his 32 known prior wills. None of those instruments gave either granddaughter any significant interest in comparison with the interest she might have had as an intestate distributee of decedent’s approximately $47 million estate. The largest provision made for movant was in a 1972 instrument, which would have given her an income interest in an $800,000 trust, but no outright gift. Decedent’s penultimate will, executed in March 1976, made no provision for either granddaughter.
The nominated executors of the March 21, 1978 will, Mamdouha S. Bobst, Milton C. Rose and Irving Trust Company (now, The Bank of New York) petitioned for probate. The granddaughters retained counsel who obtained various adjournments of the return date of the citation to enable them to consider the advisability of filing objections to the will or the 1978 Trust.
SETTLEMENT AGREEMENT
After extensive depositions, document discovery and negotiations, the granddaughters reached a settlement with all interested parties without filing objections.
In accordance with the settlement agreement, the grand *779 daughters executed waivers and consents to, inter alla, the probate of the March 21, 1978 will and waived any and all rights they might have, then or in the future, to prosecute any action or proceeding for the purpose of setting aside or invalidating the provisions of the will or the 1978 Trust.
In exchange, each granddaughter received an outright payment of $550,000 from the 1978 Trust (the original $100,000, plus an additional $450,000) and a payment of $150,000 in total on account of legal fees. The granddaughters retained their respective unitrust interest under the 1974 Trusts and the Foundation consented to the assignment of its remainder interests in such trusts to the granddaughters’ issue.
Each granddaughter also signed a general release, covenanting and agreeing that she would never institute against the released parties any action, known or unknown, which she ever had or might ever have with respect to any matter through the date of the release.
The granddaughters further executed an auxiliary agreement, wherein they agreed that they would not make or assist in the making of any declaration or publication that might tend to dishonor or degrade decedent’s memory. The purpose of the auxiliary agreement was "to protect and preserve the name, standing and reputation of the decedent and his family”.
The granddaughters agreed to turn over for immediate destruction all tape recordings in their possession of conversations with the decedent (and all copies and transcripts of such tapes in the possession of their counsel or former counsel). They agreed that the confidentiality of the contents of all such recordings or transcripts was to survive in perpetuity, and that such confidentiality would not be released or waived by them at any time. The granddaughters’ receipt of consideration under the settlement agreement was expressly conditioned on their adherence to the covenants and representations of the auxiliary agreement.
On June 27, 1979, prior to approving the settlement agreement and admitting the will to probate, then Surrogate Midonick conducted a hearing in open court where he heard counsel for the respective parties and questioned the granddaughters in order to satisfy himself that they understood the terms of the settlement agreement and its related papers and that they wanted to settle any and all controversies that they might have upon the terms set forth therein. The transcript *780 establishes that movant personally assured the court of her consent to the settlement.
CURRENT PROCEEDINGS
Following court approval of the settlement and admission of the will to probate, the matter remained dormant for more than 13 years. But, on September 9, 1992, Ms. Highley moved to vacate the probate decree on the ground that she was under a disability at the time of the prior proceedings, allegedly due to years of decedent’s incest and abuse. She claims that the settlement was procured by fraud, in that decedent’s widow and others should have known of her disability and advised the court of the need for a guardian ad litem.
Movant submits an affidavit of a psychiatrist, specializing in the mental problems of victims of incest and sexual abuse, who has examined her (and her sister) in connection with the present allegations of abuse. The psychiatrist concludes that the alleged abuse probably occurred, in light of the life histories of both granddaughters, which "follow a rather standardized pattern, including inability to form life partnerships, substance abuse, attempted suicide, financial improvidence, and strained interpersonal relationships”. The psychiatrist indicates that the wide spectrum of mental and emotional disability presented by incest victims varies from person to person and from any given situation to another. Here, any disability purportedly manifested itself in the granddaughters’ alleged inability to assess the settlement terms. The psychiatrist concludes that "neither of the granddaughters possessed sufficient mental ability, due to 'Chronic Posttraumatic stress syndrome’, to form a proper adult judgment whether to execute such release of their rights, interests and claims in the estate, and to surrender the tapes and to refrain from disgracing their grandfather’s memory”.
All three executors oppose movant’s application, alleging that movant has not shown and cannot show any proper basis in fact or law for the extraordinary relief she seeks. The guardian ad litem appointed for movant’s mentally impaired son also opposes the requested relief for the same reasons and on the basis that his ward’s interests derive entirely from the settlement.
With this background, we discuss the law on the alleged jurisdictional defect, vacatur and settlement agreements.
The protection of persons incapable of adequately protecting *781 their rights is the law of this State (CPLR art 12; SCPA art 4; Matter of Arneson, 84 Misc 2d 128). If Ms. Highley had been under a disability (SCPA 103 [40]) at the time of the probate proceeding, the failure to appoint a guardian ad litem for her would result in the lack of personal jurisdiction over a necessary party, invalidating the probate decree (see, Matter of Meyers, NYLJ, July 20, 1993, at 24, col 4).
However, until rebutted, the law presumes every person to be competent (Matter of Meyers, supra). Movant cites no authority for the proposition that chronic posttraumatic stress syndrome, even if proved, is a recognized disability under New York law. In fact, psychological impairment due to sexual abuse or incest is insufficient to trigger a tolling of the Statute of Limitations for insanity (CPLR 208; Bassile v Covenant House, 152 Misc 2d 88; Overall v Estate of Klotz, 52 F3d 398 [2d Cir 1995]; Smith v Smith, 830 F2d 11 [2d Cir 1987]). Posttraumatic stress syndrome is not deemed sufficiently disabling as to prevent a person from understanding or protecting his or her legal rights where the alleged repression of traumatic events does not result in an over-all inability to function in society (McCarthy v Volkswagen, 55 NY2d 543).
Here, it is clear that to all outward appearances, Ms. Highley was not under a disability at the time of the probate proceeding. She actively participated in the proceedings and appeared in person before Surrogate Midonick on a number of occasions. There was no apparent reason for the court sua sponte to appoint a guardian ad litem (SCPA 403).
There is every indication that Ms. Highley selected counsel of her own choosing, having consulted a number of attorneys before settling upon a seasoned surrogate’s lawyer, now deceased, as her primary counsel. Although Ms. Highley accuses the lawyer of failing to adequately protect her rights, there is no indication that he (or any of movant’s other attorneys) was aware of any disability on the part of Ms. Highley that rendered his continued representation of her improper. Movant presents no evidence of any inability to communicate with her counsel or to understand the proceedings.
Movant alleges that she, herself, was unaware of her own disability at the time of the prior proceedings. However, she does not deny her awareness of the underlying factual allegations of abuse. In fact, it appears that she used the possibility of public disclosure of facts injurious to decedent’s reputation in connection with reaching the settlement with proponents *782 and it was in exchange for the additional money that she agreed not to disclose in any way her allegations of incest and abuse. The auxiliary agreement that she signed provided a complex mechanism for the destruction of all of her tape recordings of conversations with decedent.
It is particularly noteworthy that movant does not indicate when she recovered from her alleged disability. In fact, under her theory, it would be impossible for this court, or movant’s present counsel, to know whether a guardian ad litem is required for her in the instant proceeding. Likewise, it would be impossible to know whether a guardian was or is required for decedent’s other granddaughter, Stephanie Bobst Haymes, who is also alleged to have been subjected to the same abuse by decedent, but who did not join in Ms. Highley’s motion. Indeed, it would be impossible to know whether any party might be under some hidden disability, yet undetectable, and perhaps remaining so for decades.
This case is distinguishable from those involving a person whose disability from Alzheimer’s disease was manifest and who defaulted in the proceedings (Matter of Meyers, supra), or involving a person who was a "deteriorated epileptic” and who defaulted (Matter of Arneson, 84 Misc 2d 128, supra), or where the status of a nonmarital child was never brought to the court’s attention (Matter of Duncan, NYLJ, May 28, 1992, at 23, col 1). Here, Ms. Highley alleges as the sole manifestation of her disability the fact that, on the advice of counsel, she agreed to a settlement that she believes was "very inadequate and unsatisfactory” and that she now regrets.
Based upon the foregoing, movant’s mere allegation of disability is insufficient to entitle her to a hearing on the issue of the alleged abuse.
Because vacatur disrupts the orderly process of administration and creates a continual aura of uncertainty and nonfinality, a probate decree will be vacated only in extraordinary circumstances (Matter of Stern, NYLJ, July 20, 1994, at 26, col 3). Although vacatur may be appropriate in cases of fraud (Matter of Paul, 105 AD2d 928), mere allegations in the petition without evidentiary facts do not suffice to make out a cause of action for fraud (Central State Bank v American Appraisal Co., 33 AD2d 1009; Penna v Caratozzolo, 131 AD2d 738; Matter of Turetsky, NYLJ, Sept. 24, 1991, at 22, col 6).
Here, movant asserts that decedent’s widow knew of, and kept hidden from the court, movant’s alleged disability. However, as discussed above, movant provides no details as to the *783 manifestations of her alleged disability and does not present a scintilla of proof that the widow was aware of such disability. Since movant maintains that she was unaware of her own purported disability at the time, it is impossible to understand how she imputes to others knowledge of her hidden mental state.
An application to vacate a decree also may be barred by loches, defined as unreasonable delay resulting in prejudice to other parties (Matter of Hug, 201 Misc 711, affd without opn 284 App Div 870; Matter of Kalmowitz, 134 Misc 508). Where a request for vacatur of probate based on fraud is made years after entry of the decree, petitioner must show clear and convincing evidence of fraud and grounds upon which probate of the will could be contested if petitioner’s loches is to be excused (Matter of Carney, 31 Misc 2d 676).
Movant has made neither a showing of substantial basis to contest the will nor a reasonable probability of success (see, Matter of Tooker, 21 AD2d 928; Matter of Elson, 94 Misc 2d 983). Movant merely asserts the novel theory that a finding of sexual abuse and incest would mandate that the will be invalidated on the ground that the perverted mind of a testator capable of so heinous a crime would, as a matter of law, be lacking in testamentary capacity. She cites no authority for such a proposition and none has been found by the court.
Finally, we turn to stipulations of settlement which are favored by the courts and will not be set aside in the absence of fraud or overreaching (Hallock v State of New York, 64 NY2d 224; Matter of Slaughter, 206 AD2d 537). This is particularly true of "open court” stipulations, where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the integrity of the litigation process (Hallock v State of New York, supra; Harragan v Harragan, 204 AD2d 686).
Thus, although this court acknowledges movant’s emotional and financial difficulties, there is no sufficient basis for the requested relief. Accordingly, movant’s request to overturn the settlement agreements and vacate the probate decree is denied.
The parties shall be notified of a conference date with respect to the executors’ pending application for damages for alleged violation by Ms. Highley of the 1979 settlement agreements and probate decree.