■ In the Matter of the Estate of FLORENCE MUSSO, Deceased. UNITED CEREBRAL PALSY OF NEW YORK CITY, INC., et al., Respondents; CHEMICAL BANK et al., Appellants. [642 NYS2d 322] —In a probate proceeding, Chemical Bank appeals, and Rebecca Roczen Carley separately appeals, from an order of the Surrogate's Court, Kings County (Bloom, S.), dated April 21, 1995, which, *inter alia,* vacated a decree of the same court dated March 3, 1993, admitting to probate the Last Will and Testament of Florence Musso dated February 1, 1991, and revoked the Letters Testamentary granted to the executors Chemical Bank and Rebecca Roczen Carley.

Ordered that the order is affirmed, with one bill of costs payable by the appellants personally.

The decedent, Florence Musso, had worked as a legal secre-

tary and invested her money in the stock market. At her death on June 16, 1991, at the age of 90, her estate was worth approximately $6,700,000. The decedent did not marry, had no children, and was alienated from all of her family except for a niece. In 1981, the decedent made a will which left a bequest to this niece and the balance of her estate to various charities.

In 1990, the decedent broke her hip and was taken to Kings County Medical Center, where she became acquainted with a hospital intern, Rebecca Roczen Carley, M.D. Upon her discharge from the hospital, the decedent went to live with Dr. Carley and Tom Roczen, who was Dr. Carley's husband at that time. While living with Dr. Carley and Tom Roczen, the decedent gave them cash gifts totalling approximately $440,000, part of which was used by them to purchase a condominium.

On July 2, 1990, shortly after her discharge from the hospital, the decedent executed a new will using a lawyer recommended by Dr. Carley. This will bequeathed 1/2 of the shares of Bristol-Meyers Squibb stock owned by the decedent to George Hamilton, the son of her niece, with the remainder of the estate to the charities. On February 1, 1991, approximately four months prior to her death, the decedent again revised her will, leaving all of the shares of the Bristol-Meyers Squibb stock to her grandnephew and naming Dr. Carley and Tom Roczen as the residuary legatees, and Dr. Carley and Chemical Bank as executors.

The 1981 and 1990 wills had not been filed with the Surrogate's Court, and the various charities were not notified about the bequests in the 1981 will until December 9, 1992, through December 11, 1992. On December 23, 1992, the Surrogate's Court held that the 1991 will would be admitted to probate. By order to show cause dated August 13, 1993, the petitioners, 5 of the 7 charities named in the 1981 and 1990 wills, moved to vacate the probate decree, and the decree was vacated.

The appellants contend that the decree was improperly vacated, *inter alia*, because the charities failed to meet their burden on an application to vacate a probate decree on the grounds of undue influence and lack of testamentary capacity. An application to vacate a probate decree is addressed to the discretion of the court (*see, e.g., Matter of Eisenlohr*, 153 Misc 130). Furthermore, while "vacatur disrupts the orderly process of administration and creates * * * uncertainty and nonfinality" (*Matter of Bobst*, 165 Misc 2d 776, 782), "the Court should also be slow to say that an injustice may not be corrected"

(*Matter of Macior,* 52 NYS2d 389, 391). A petitioner seeking to vacate a probate decree must establish "with some degree of probability that his claim is well founded, and that, if afforded an opportunity, he will be able to substantiate it" (*Matter of Leslie,* 175 App Div 108, 112). Here, the petition demonstrated a substantial basis for contesting the will and showed a reasonable probability of success (*see, e.g., Matter of Tooker,* 21 AD2d 928).

The appellants' remaining contentions are without merit. Thompson, J. P., Joy, Krausman and Florio, JJ., concur.